**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

**ROBIN MAGEE**                                                                                              **PLAINTIFF**

**v.**                                                                **CIVIL ACTION NO. 3:20-cv-685-CWR-MTP**

**COMMISSIONER OF SOCIAL SECURITY**                                              **DEFENDANT**

## REPORT AND RECOMMENDATION

Plaintiff Robin Magee brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of Social Security Administration denying her claims for disability insurance benefits and supplemental security income. Having considered the parties' submissions, the record, and the applicable law, the undersigned recommends that Plaintiff's Motion for Summary Judgment [23] be DENIED, the Commissioner's final decision be AFFIRMED, and this action be DISMISSED with prejudice.

## PROCEDURAL HISTORY

On April 5, 2019, Plaintiff applied for disability insurance benefits and supplemental security income, alleging that she has been disabled since November 19, 2017, due to "problems with right leg." (Administrative Record [18] at 188-99; 212). After the agency denied Plaintiff's claim, an Administrative Law Judge ("ALJ") conducted a hearing, and on March 17, 2020, the ALJ issued a decision finding that Plaintiff was not disabled. ([18] at 14-27). Plaintiff then appealed the ALJ's decision to the Appeals Council. On September 10, 2020, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner ([18] at 5-8). Plaintiff now seeks judicial review in this Court under 42 U.S.C. § 405(g).

1

## ADMINISTRATIVE LAW JUDGE'S DECISION

In her March 17, 2020, decision, the ALJ applied the five-step sequential analysis set forth in 20 C.F.R. § 404.1520(b)-(f)[1] and determined that Plaintiff was not disabled. At step one, the ALJ noted that Plaintiff worked after the alleged disability onset date—November 19, 2017—but found that this work activity did not rise to the level of substantial gainful activity. ([18] at 16).[2] The ALJ found at step two that Plaintiff had the following severe impairments: "post bilateral lower extremity fractures; post pelvic fractures; peroneal nerve palsy; obesity; and chronic pain syndrome." ([18] at 17). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. ([18] at 17-18).

The ALJ then examined the record and determined that Plaintiff had the residual functional capacity ("RFC")[3] to perform "sedentary work as defined in 20 CFR 404.1567(a) and

---

[1] This analysis requires the ALJ to make the following determinations:
   (1) whether the claimant is presently engaging in substantial gainful activity (if so, a finding of "not disabled" is made);
   (2) whether the claimant has a severe impairment (if not, a finding of "not disabled" is made);
   (3) whether the impairment is listed, or equivalent to an impairment listed, in 20 C.F.R. Part 404, Subpart P, Appendix 1 (if so, then the claimant is found to be disabled);
   (4) whether the impairment prevents the claimant from doing past relevant work (if not, a finding of "not disabled" is made);
   (5) whether the impairment prevents the claimant from performing any other substantial gainful activity (if so, the claimant is found to be disabled).
*See* 20 C.F.R. §§ 404.1520, 416.92. The burden of proof rests upon the claimant throughout the first four steps; if the claimant is successful in sustaining his burden through step four, the burden then shifts to the Commissioner at step five. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

[2] Plaintiff was self-employed as a cosmetologist and earned $9,694.00 in 2018. ([18] at 200).

[3] "Residual Functional Capacity" is defined as the most an individual can still do despite the physical and/or mental limitations that affect what the individual can do in a work setting. 20 C.F.R. §§ 404.1520(a)(4), 404.1545(a)(1).

416.967(a)[4] except she can occasionally climb ramps, stairs, ladders, ropes, or scaffolds; occasionally balance, kneel, stoop, crouch, and crawl; and she can occasionally be exposed to workplace hazards such as moving mechanical parts and high exposed places." ([18] at 19). At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. ([18] at 25). At step five, however, the ALJ found that jobs existed in significant numbers in the national economy which Plaintiff could perform. ([18] at 26). Accordingly, the ALJ determined that Plaintiff was not disabled. ([18] at 27).

## STANDARD OF REVIEW

This Court's review of the Commissioner's decision is limited to determining whether there is substantial evidence to support the Commissioner's findings and whether the correct legal standards were applied in evaluating the evidence. *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hames v. Heckler,* 707 F.2d 162, 164 (5th Cir. 1983). To be substantial, the evidence "must do more than create a suspicion of the existence of the fact to be established." *Id*.

However, "[a] finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) (internal citations and quotations omitted). Conflicts in the evidence are for the Commissioner, not the courts, to resolve. *Selders v. Sullivan,* 914 F.2d 614, 617 (5th Cir. 1990). A court may not re-weigh the evidence, try the issues *de novo*, or substitute its judgment for the

---

[4] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a); 20 C.F.R. § 416.967(a).

Commissioner's, "even if the evidence preponderates against" the Commissioner's decision. *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988). If the decision is supported by substantial evidence, it is conclusive and must be affirmed. *Selders,* 914 F.2d at 617. Moreover, "'[p]rocedural perfection in administrative proceedings is not required' as long as 'the substantial rights of a party have not been affected.'" *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (quoting *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir.1988)).

## ANALYSIS

Plaintiff presents two arguments for judicial review: (1) the ALJ substituted her own medical judgment to determine Plaintiff's residual functional capacity and (2) the Commissioner has not established the existence of work in significant numbers which the Plaintiff can perform.

**Issue 1: Medical Opinions**

Plaintiff argues that the ALJ erred by rejecting all the medical opinions of record and basing the RFC determination on her own lay opinion. Pursuant to Social Security Administration regulations, an ALJ need "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinions," including those from treating medical sources. *See* 20 C.F.R. § 404.1520c(a). Instead, an ALJ must evaluate the "persuasiveness" of medical opinions by utilizing five factors: supportability, consistency, relationship with the claimant, specialization, and other factors.[5] *See* 20 C.F.R. § 404.1520c(c). The most important factors are supportability and consistency. *See* 20 C.F.R. § 404.1520c(b)(2). An ALJ is required to explain how she considered the supportability and consistency factors, but need not explain

---

[5] Other factors include, but are not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability programs, policies and evidentiary requirements." *See* 20 C.F.R. § 404.1520c(c)(5).

4

how she considered the other factors in determining the persuasiveness of the medical opinion. *See* 20 C.F.R. § 404.1520c(b)(2).

Here, Plaintiff was involved in a serious motor vehicle accident on November 19, 2017, which resulted in her suffering multiple injuries, including fractures to her femur, tibia, fibula, heel, spine, ribs, and mandible. ([18] at 17, 21). Plaintiff underwent numerous surgeries as a result. ([18] at 21). Plaintiff calls attention to a consultative examination performed by Dr. Noella Misquita, a medical source statement from a treating nurse practitioner, Rori Bridges, and the opinions of the state agency medical consultants. On June 11, 2019, Dr. Misquita examined Plaintiff and provided the following functional assessment:

> Maximum standing and walking capacity: Up to six hours in an eight-hour workday.
>
> Maximum sitting capacity: Up to eight hours in an eight-hour workday.
>
> Assistive device: None used.
>
> Maximum lift/carry/push/pull capacity: 20 pounds occasionally and 10 pounds frequently. Justification for limitations is status post motor vehicle accident in 2017 with injuries to her hips, right leg, and walks with a limp with decreased mobility of the right ankle and chronic pain.
>
> Postural activities: Climbing steps and stairs frequently. Ladders, scaffolds, ropes, balance occasionally. Stooping, crouching frequently. Kneeling occasionally. Crawling never. Justification for limitation is status post surgery and injury to her knees per claimant and right lower leg and ankle with decreased range of motion of the latter, chronic pain, obesity, and unable to demonstrate tandem walking.
>
> Manipulative activities: No limitations for any including reaching overhead, reaching forward, handling, fingering and feeling.
>
> Workplace environmentally activities: Working at heights and around heavy machinery have limitations. Working around extremes of temperature, chemical, dust, fumes, gases, and excessive noise no limitations. Justification for limitations is obesity, status post car accident with surgery to her legs, hips, knees, chronic right ankle pain with decreased range of motion, unable to demonstrate tandem walking, and walks with a limp.

([18] at 1521-22).

Nurse Practitioner Bridges—in her medical source statement dated January 23, 2020—indicated that Plaintiff could lift and carry ten pounds frequently; had no limitation with standing and walking; could sit for less than two hours in an eight-hour workday; needed to alternate sitting, standing, and walking to relieve discomfort; needed to lie down at unpredictable intervals; could never twist, stoop, crouch, or climb ladders; and had limitations with reaching, handling, fingering, and feeling. Bridges also indicated that Plaintiff's impairments would cause her to be absent from work more than three times a month. ([18] at 1569-73).

As for the state agency physicians, on July 5, 2019, Dr. Reginald Bass determined that Plaintiff could perform light work, and on August 22, 2019, Dr. Glenn James concurred with Dr. Bass's determination. ([18] at 106-07; 135). These physicians concluded that Plaintiff could lift and carry twenty pounds; could sit for six hours in an eight-hour workday; and was able to occasionally stoop, kneel, crouch, and climb ladders and stairs. ([18] at 104-05).

Explaining that she considered the medical opinions in accordance with the requirements of 20 C.F.R. § 404.1520c, the ALJ found that the opinions of the state agency physicians were more consistent with the medical records, and thus more persuasive, than the other medical opinions. ([18] at 19; 24). The ALJ, however, did not give any medical opinion controlling weight. Although she found them persuasive, the ALJ did not adopt the state agency physicians' opinions as her own, finding that Plaintiff could perform only sedentary work, not light work.

Discounting Dr. Misquita's opinion, the ALJ noted that the consultant's review was limited to the records of Nurse Practitioner Bridges's treatment, whereas the state agency physicians reviewed all of the Plaintiff's medical records. ([18] at 24; 1515). Concerning Bridges's opinions, the ALJ found that "the records simply do not support the majority of what

she wrote." 25. The ALJ contrasted Bridges's statement that "nearly every bone in [Plaintiff's] body was broken" with the medical records showing that while Plaintiff's pelvis and lower extremities were severely injured, her spine and upper extremities were spared major injury. ([18] at 25; 1570). The ALJ also noted Bridges's treatment notes from September 27, 2019, indicating that Plaintiff was not in acute distress, her extremities were normal with no edema, and she did not have gait abnormalities. ([18] at 1548-49).

The ALJ discussed Plaintiff's accident and treatment in detail, describing her injuries as "terrible." ([18] at 24). The ALJ, however, found that within twelve months of the accident, Plaintiff "had healed sufficiently to be capable of performing sedentary exertional work." ([18] at 24). By March of 2018, Plaintiff had regained full range of motion and x-rays revealed that fractures were consolidating nicely. ([18] at 437). Later, in June of 2019, x-rays revealed that her fractures had healed with no abnormalities or malalignment. ([18] at 21; 1508; 1512).

The ALJ considered Plaintiff's subjective complaints. Plaintiff testified that she was in pain all the time; spent half the day in bed; and was unable to lift a gallon of milk, walk 100 yards, stand for more than thirty minutes, or sit for more than five minutes at a time. ([18] at 20). The medical records—including the medical opinions cited by Plaintiff—contradict her testimony. For example, Plaintiff's testimony that she was unable to lift a gallon of milk, which weighs 8.6 pounds, conflicts with Dr. Misquita's findings that Plaintiff could lift 20 pounds occasionally and 10 pounds frequently. ([18] at 1521). The ALJ discounted Plaintiff's statements, finding they were inconsistent with the clinical findings showing her progressive recovery.

Plaintiff argues that the ALJ "played doctor" by basing her determination on her own lay opinion of the medical data. The law is clear that the ALJ has the sole responsibility of

7

determining a claimant's disability status and is free to reject the opinion of any physician when the evidence supports a contrary conclusion. *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000). The ALJ considered subjective complaints, medical records, and the medical opinions of record. The ALJ's decision offers a thorough review of the evidence of record. "What [plaintiff] characterizes as the ALJ substituting his opinion is actually the ALJ properly interpreting the medical evidence to determine [plaintiff's] capacity for work." *Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012).

As noted above, [s]ubstantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hames*, 707 F.2d at 164. The claimant bears the burden of demonstrating that the ALJ's determination is not supported by substantial evidence. *Audler*, 501 F.3d at 448. The undersigned recognizes that there is some evidence of record which support's Plaintiff's position. However, the law is clear: conflicts in the evidence are to be resolved by the ALJ, not the courts. *Selders*, 914 F.2d at 617. The ALJ provided an explanation of her evaluation of the factors of supportability and consistency and, thus, the persuasiveness of the medical opinions. The ALJ's evaluation of these opinions and Plaintiff's RFC is supported by substantial evidence and comports with applicable law.

**Issue 2: Existence of Work in Significant Numbers**

At step five of the sequential analysis, the ALJ considered whether jobs existed in significant numbers in the national economy that Plaintiff could perform. The ALJ enlisted the assistance of a vocational expert ("VE"). To determine the extent to which Plaintiff's limitations eroded the occupational base, the ALJ asked the VE whether jobs existed in the national economy for an individual with Plaintiff's age, education, work experience, and RFC. The VE

8

testified that such an individual would be able to perform jobs such as addresser (with 3,000 jobs in the national economy), document preparer (with 19,000 jobs in the national economy), and surveillance system monitor (with 8,000 jobs in the national economy), which are listed in the Department of Labor's Directory of Occupational Titles ("DOT"). ([18] at 26).

The ALJ erred at step five, says the Plaintiff, by relying on the VE's testimony. Plaintiff challenges the VE's testimony in two respects. First, Plaintiff argues that the cumulative total of 30,000 jobs in the national economy is an insufficient number of jobs to support a determination that work exists which Plaintiff could perform. Second, Plaintiff argues that the DOT is obsolete and the Commissioner has failed to establish that the jobs identify by the VE and accepted by the ALJ actually exist (and are performed in the manner described by the DOT) in the present national economy.

Concerning the number of jobs, 20 C.F.R. § 404.156 provides that "[w]ork exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which you are able to meet with your physical or mental abilities and vocational qualifications." But, "[i]solated jobs that exist in very limited numbers in relatively few locations outside of the region where you live are not considered work which exists in the national economy." *See* 20 C.F.R. § 404.156. "[W]ork exists in significant numbers in the national economy if it exists in significant numbers in either the region where the claimant lives or in other regions of the country." *Lirley v. Barnhart*, 124 Fed. Appx. 283, 283-84 (5th Cir. 2005).

The Fifth Circuit has not set a specific number of jobs that it deems to be "significant numbers." However, various courts, including the Fifth Circuit, have held that job numbers like those at issue are significant. *See Lirley*, 124 Fed. Appx. at 283-84 (holding that 50,000 jobs in

the national economy are significant); *Charles v. Saul*, 2021 WL 1092664, at *7 (E.D. La. Mar. 5, 2021) (collecting cases);[6] *Duckworth v. Astrue*, 2010 WL 2899346, at *5 (N.D. Tex. June 21, 2010) (noting that "30,000 jobs in the national economy is considered significant"); *Weiler v. Apfel*, 179 F.3d 1107, 1110-11 (8th Cir. 1999) (finding that 32,000 jobs in the national economy are significant); *Lynn v. Colvin*, 637 Fed. Appx. 495, 499 (10th Cir. 2016) (finding that 24,900 jobs in the national economy are significant). The VE identified multiple occupations with a cumulative total of 30,000 jobs in the national economy, which constitute significant numbers and do not fall into the category of "isolated jobs" existing in "very limited numbers."

Turning to the specific jobs listed by the VE, Plaintiff argues that these jobs are obsolete or likely no longer exist as described in the DOT. As mentioned, the VE identified three jobs (addresser, document preparer, and surveillance system monitor) listed in the DOT. According to Plaintiff, the DOT is outdated and the VE should not have relied on it. Plaintiff calls attention to the VE's testimony that she did not know the exact year when the DOT was last updated but knew it was outdated. Plaintiff also cites a study published in May of 2011—the SSA, Occupational and Medical-Vocational Claims Review Study—which called into question whether the job of addresser currently exists in significant numbers in the economy.

"Whether the DOT is outdated is not a determination this Court can make." *Walker v. Berryhill*, 2017 WL 6883894, at *5 (N.D. Tex. Dec. 19, 2017). The issue of the DOT's credibility has been resolved through the rulemaking process. The governing regulations list the

---

[6] The *Charles* court cited several cases, including *McGee v. Astrue*, 2009 WL 2841113, at *6 n.14 (W.D. La. Aug. 28, 2009) (finding that 150 jobs in the state of Louisiana and 18,760 in national economy constitute significant numbers); *Johnson v. Chater*, 108 F.3d 178, 181 (8th Cir. 1997) (200 jobs at state level and 10,000 nationally constitute significant number); and *Mercer v. Halter*, 2001 WL 257842, at *6 (N.D. Tex. Mar. 7, 2001) (finding that 500 jobs in Texas and 5,000 jobs in national economy constitute significant numbers).

10

DOT as a reliable source for information regarding jobs that exist in the national economy of which the Administration may take administrative notice. *See* 20 C.F.R. §§ 404.1566(d)(1) & 1569; *see also* SSR 00-4p ("we rely primarily on the DOT"); *Caldwell v. Berryhill*, 2019 WL 3802853, at *5 (S.D. Tex. Aug. 13, 2019); *Sigler v. Commissioner*, 2020 WL 3097380, at *6 (D. Colo. June 11, 2020) ("the ALJ was under no obligation to take administrative notice of [the Review Study], whereas the ALJ did rely on the DOT and testimony of a vocational expert, both of which are considered reliable sources by governing regulations."); *Linda Michelle M. v. Saul*, 2019 WL 7762203, at *6-7 (N.D. Tex. Dec. 27, 2019) ("The Regulations explicitly allow the ALJ to employ the DOT in determining whether there is work the claimant can do."). This Court "is not at liberty to substitute its judgment for those regulations." *New v. Comm'r of SSA*, 2014 WL 7361602, at *9 (N.D. Miss. Dec. 23, 2014).

An ALJ "has an affirmative responsibility to ask about any possible conflict between VE evidence and the DOT before relying on VE evidence to support a determination of not disabled." *Graves v. Colvin*, 837 F.3d 589, 592 (5th Cir. 2016). The ALJ asked about any such conflicts at the hearing as required. ([18] at 93-94). The ALJ "did not err in relying on the VE testimony based off of information from the DOT." *Banks v. Colvin*, 2013 WL 12101099, at *14 (S.D. Tex. June 28, 2013). "Any argument that the ALJ fails to apply proper legal standards or otherwise commits legal error by relying on the DOT job descriptions as relevant evidence to support a finding that there is other work plaintiff can perform despite his severe impairments is without merit." *Joseph T. v. Saul*, 2020 WL 930514, at *9 (N.D. Tex. Jan. 29, 2020). Substantial evidence supports the ALJ's finding that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.

## CONCLUSIONS AND RECOMMENDATIONS

Based on the foregoing, the undersigned finds that the Commissioner's decision is supported by substantial evidence and that no reversible error of law was committed by the ALJ. Accordingly, the undersigned recommends that Plaintiff's Motion for Summary Judgment [23] be DENIED, the Commissioner's final decision be AFFIRMED, and this action be DISMISSED with prejudice.

## NOTICE OF RIGHT TO OBJECT

In accordance with the Rules of this Court, any party, within fourteen days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the District Judge, the U.S. Magistrate Judge, and the opposing party. The District Judge at that time may accept, reject or modify in whole or in part, the recommendation of the Magistrate Judge, or may receive further evidence or recommit the matter to this Court with instructions. Failure to timely file written objections to proposed findings, conclusions, and recommendations contained in this report will bar an aggrieved party, except on the grounds of plain error, from attacking on appeal unobjected to proposed factual findings and legal conclusions accepted by the District Court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996).

This 24th day of June, 2022.

s/ Michael T. Parker  
United States Magistrate Judge